[No. 23604.   Department Two.   August 5, 1932.]

DAVID P. EASTMAN, INC., *Appellant*, v. NORTHWESTERN
MUTUAL LIFE INSURANCE COMPANY,
*Respondent.*[1]

*Raymond D. Ogden* and *Ward Wm. Roney*, for appellant.

*Allen, Froude, Hilen & Askren*, for respondent.

[1]Reported in 13 P. (2d) 488.

MILLARD, J.—Plaintiff, as beneficiary, instituted this action to recover on a life insurance policy. Defendant's challenge to the sufficiency of the evidence to warrant a recovery was sustained, the court expressing the view that, though within the period of grace the insured so requested, there was no evidence that the defendant consented to change the method of payment of the premium from an annual to a quarterly basis. The jury was discharged and judgment of dismissal was entered. The plaintiff appeals.

David P. Eastman was president of the appellant corporation and owned ninety-nine per cent of its capital stock. Rufus C. Atkinson was appellant's secretary. On June 9, 1926, respondent issued its "Whole Life" policy, of which appellant was designated the beneficiary, on the life of David P. Eastman, in the sum of ten thousand dollars. The application for the policy provided that, at the election of the insured, the annual premium of $444.30 should be payable in quarterly, semi-annual or annual installments, and that, at the option of the insured, the cash dividends "until otherwise directed, shall be (1) applied towards reduction of premium." Under one of the contract provisions, reading as follows, the insured was permitted, on any anniversary of the annual payment date, to change the manner of payment of the premium from annual to semi-annual or quarterly installments:

"The insurance under this Policy is based upon annual premiums but payment may be made in semi-annual or quarterly installments at the published rates now in use by the Company. Change may be made on any anniversary of the date hereof. . . ."

A grace period of thirty-one days, during which time the insurance remained in full force, was allowed for the payment of every premium except the first. At the option of the beneficiary, the annually earned divi-

dend could be withdrawn in cash or applied towards the payment of the insurance premium. The insured elected to pay the premium annually. He paid it for the years 1926, 1927 and 1928. This controversy grew out of the failure to pay, within the grace period, the annual premium due June 9, 1929.

On June 9, 1926, the respondent issued its policy, with the appellant as beneficiary thereof, on the life of Rufus C. Atkinson. The premiums on the Eastman and Atkinson policies were payable by, and the earned dividends on the two policies were payable to, appellant.

At various times (1920, 1923 and 1925) five policies, in which Mr. Eastman's wife was named as beneficiary, were issued by the respondent on the life of David P. Eastman. Mr. Eastman died July 12, 1929, which was subsequent to the expiration of the period of grace within which the annual premium due June 9, 1929, should have been paid on his life insurance policy of which appellant was the beneficiary. The earned dividends were insufficient to pay that premium.

Respondent paid the policies of which Mrs. Eastman was the beneficiary. On the ground that the policy had lapsed through non-payment of premium, the respondent refused to pay to appellant the policy on the life of Mr. Eastman. The policy on the life of Mr. Atkinson also lapsed through failure to pay the premium thereon. Separate checks for the dividends earned upon the Atkinson and Eastman policies were transmitted by respondent to appellant after the death of Mr. Eastman. The dividend on the Atkinson policy was retained by the appellant. The check for the dividend upon the Eastman policy was promptly returned by appellant to respondent and this action followed with the result recited above.

Counsel for appellant argue that the insured had the right to change, within the period of grace, the manner of the payment of the premium from that of an annual to that of a quarterly payment; that the insured notified the respondent within the grace period of his desire to change the manner of payment; and that the respondent, by reason of the course of conduct between the parties, is estopped to deny that the change was made. Therefore, insist counsel for appellant, the policy did not lapse as the respondent had in its hands moneys of the insured sufficient to pay the quarterly premium on the Eastman policy.

A Mr. Johns, who was formerly connected with the Seattle office of respondent and who had written the insurance policy involved in this action, testified on behalf of appellant that on July 6, 1929, Mr. Eastman, called at the office of the witness and in the presence of that witness telephoned to the respondent's local office manager. The telephone conversation, as the witness claims to have heard it, was as follows:

"And he said, 'There are a couple of premiums due on the David P. Eastman Agency,' and he said, 'The grace period of which is up on the 9th of July,' and he said, 'I want to cancel the Atkinson policy, because he is no longer connected with me,' and he said, 'But I want to keep up my own policy,' and he said, 'Mr. John estimates that it will take between five and six dollars to pay the difference in the premium—the quarterly premium and the dividend, and if you will send me a statement, I will be glad to send you a check for the difference.' And he further said, 'I wish you would write me a letter about this.' "

A clerk in the office of this witness testified, corroborating the foregoing. The two witnesses also testified that the insured, during the same telephonic conversation, requested the respondent's local manager to handle the matter in the same manner as he had

handled four or five of Mr. Eastman's private policies.

Mr. Johns, on cross-examination, admitted that some time prior to the trial, upon being interviewed by one of respondent's counsel, he signed a statement as follows concerning the telephone conversation:

"I haven't been acting for the Northwestern in any capacity since about November 21, 1928. At about the first part of July, 1929, Eastman called at my office and wanted to know how to keep the policies in force, and I told him how he might change them from an annual to a quarterly basis. He called the Northwestern. I don't know who he talked to, and he asked that both his personal and the company policies be made payable on a quarterly basis. I don't know whether whoever was talking to him said this could be done or not, or whether said person agreed to change or not. This was only a couple of days before the thirty-day grace period expired. I don't remember whether or not he requested that the dividend be applied on the premium. I don't know whether or not he was assured that the dividend would pay the premium. I advised Eastman to write a letter to the insurance company. Eastman was a friend of mine and used to consult me with reference to his insurance matters."

Respondent's office manager denied that he ever had any such telephone conversation with Mr. Eastman. About a month previous to the conversation related above, Mr. Eastman requested (after the anniversary payment date, but within the grace period) respondent's office manager to change the manner of payment of the premiums on the policies, in which Mr. Eastman's wife was named as beneficiary, from an annual to a quarterly basis. The request was granted and the earned dividends applied to the payment of the premiums. In four of those policies the dividends earned were sufficient to pay the premiums. The earned dividend on the fifth policy lacked one dollar and forty-

two cents of being sufficient to pay the quarterly premium. On July 2, 1929, an employee of respondent wrote to Mr. Eastman requesting remittance of the balance of one dollar and forty-two cents necessary to pay the quarterly premium. Mr. Eastman's remittance of that amount was received by respondent one day after the expiration of the grace period, but his policy was not permitted to lapse.

By the terms of the contract the respondent was required to apply the earned dividends toward the reduction of the premium payable on the Eastman policy. Under that contract the insured was permitted *on any anniversary of the annual payment date* to change the manner of payment of the premium from annual to semi-annual or quarterly installments.

The Atkinson policy may be disregarded. The appellant requested cancellation of that policy and accepted, subsequent to Mr. Eastman's death, the earned dividends on that policy. The two transactions of Mr. Eastman with the respondent concerning the former's personal policies are of no evidential effect as to the course of conduct of the parties with respect to the policy of which appellant is the beneficiary. Those transactions did not create an estoppel against the respondent on the company policy. The policies are separate and distinct. In *Brown v. Fidelity Mutual Life Ins. Co.,* 197 Ky. 430, 247 S. W. 47, the insured, on a number of occasions, was permitted to pay his premiums after the period of grace upon a policy in the defendant company. A second policy was issued by the defendant to the insured, who died after the expiration of the grace period. In an action to recover on the second policy it was contended that the insurer by its course of dealing with the insured established a custom of accepting payments of premiums after the expiration of the grace period and thereby

induced the insured to believe that the insurer would not forfeit the policy upon the failure of the insured to pay the premium within the period of grace. In denying recovery, the court said:

"The proof shows that the insured, on a number of occasions after taking out the second policy, did not pay the premium within the 31 days of grace allowed; and it also shows a similar practice on his part with reference to the first policy. We do not, however, regard the conduct of the parties in respect to the first policy as having any evidential effect on the custom or practice in regard to the second policy, since the latter policy was a separate contract, and the custom as to extending the time of payment of premiums thereon, if one existed, must be determined from the conduct of the parties in reference to that contract and none other."

On July 6, 1929, at the time of the telephonic conversation narrated above, the quarterly premium owing by appellant to the respondent on the Eastman policy was five dollars and seventy cents in excess of the earned dividends on that policy.

It is clear that, under the terms of the insurance contract, appellant's privilege of changing, as a matter of right, the premium payment period was limited to the anniversary date of the policy, which was June 9th. However, assuming that appellant would at any time within the period of grace be permitted to change from an annual to a quarter-annual premium basis, there is no evidence that the respondent consented to such change. If we assumed that the respondent consented to the change, or was by course of conduct estopped to deny that it consented, the earned dividends were insufficient to pay a quarterly premium on the policy. The respondent was under no duty to advance the deficiency necessary to continue the policy in force.

Appellant next complains of the exclusion of

the testimony of appellant's bookkeeper. That testimony was offered for the purpose of showing that Mr. Eastman on July 6th told the appellant's bookkeeper what he had done with the Atkinson and Eastman policies. There is no contention that Mr. Eastman told the bookkeeper to make a book entry or to send a check to the respondent.

The court correctly excluded the testimony. The statement by Mr. Eastman, the appellant's president, was a statement by appellant. It was of a self-serving nature, hence it was not admissible in evidence in appellant's favor. 22 C. J. 220, 229. The death of Mr. Eastman does not render his self-serving declaration admissible. 22 C. J. 230.

It is suggested that the medical examination of Mr. Eastman probably occurred subsequent to June 9th, and, therefore, the policy became effective on such later date; hence, the period of grace had not expired at the time of Mr. Eastman's death.

The policy does not provide that the premium shall be paid on the date the policy goes into effect and that the premium shall be paid thereafter on the anniversary of that date. The insurance contract provides that the premium shall be paid "on or before the 9th day of June in every year during the lifetime of David P. Eastman." Manifestly, the grace period began to run on the 9th and expired on July 10th.

The judgment is affirmed.

MITCHELL, MAIN, and HOLCOMB, JJ., concur.

TOLMAN, C. J., dissents.